**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ANTHONY GUERRIER,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 20-70115

Agency No.
A213-193-324

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of an
Immigration Judge

Argued and Submitted July 28, 2021
Pasadena, California

Filed August 16, 2021
Amended November 9, 2021

Before: Milan D. Smith, Jr. and John B. Owens, Circuit
Judges, and Eduardo C. Robreno,* District Judge.

Order;
Opinion by Judge Robreno

---

*The Honorable Eduardo C. Robreno, United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

## SUMMARY[**]

### Immigration

The panel filed (1) an order amending its opinion, denying a petition for panel rehearing, and denying on behalf of the court a petition for rehearing en banc; and (2) an amended opinion dismissing for lack of jurisdiction Anthony Guerrier's petition for review of an immigration judge's negative credible fear determination which resulted in an order for his expedited removal.

Under 8 U.S.C. § 1252(a)(2)(A), no court shall have jurisdiction to review an expedited removal order except as provided in subsection (e) of section 1252. In turn, subsection (e) limits judicial review to three issues, raised in habeas corpus proceedings: (1) whether the petitioner is an alien; (2) whether the petitioner was ordered removed under an expedited removal order; and (3) whether the petitioner can prove that he or she has lawful status in the United States as an asylee, refugee, or permanent resident. Applying these provisions, this court held in *Pena v. Lynch*, 815 F.3d 452 (9th Cir. 2016), that because no claim listed in the statutory exceptions was raised, it lacked jurisdiction to review any constitutional or statutory claims related to the expedited removal order. The court noted, however, that both the Supreme Court and this Circuit had suggested that a litigant may be unconstitutionally denied a forum when there is absolutely no avenue for judicial review of a colorable claim of constitutional deprivation. Pena argued that the immigration judge's failure to elicit a knowing and voluntary

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

waiver of Pena's right to counsel violated his due process rights.  Although in *Pena* the court concluded that the petitioner had not raised a colorable constitutional claim because the immigration judge had elicited a voluntary waiver of counsel, it wrote that "the jurisdiction-stripping provisions of the statute retain some avenues of judicial review, limited though they may be."

Guerrier argued that unlike *Pena*, where the immigration judge elicited a voluntary waiver of counsel during the petitioner's credible fear interview, Guerrier continually expressed a desire for counsel during his credible fear interview, and the Government failed to provide vital information in his native language.  Guerrier argued that this failure violated his right to due process, qualifying him for the "colorable constitutional claim" exception to the general rule that the court lacks jurisdiction to hear challenges to expedited orders of removal.

As an initial matter, the panel concluded that Guerrier raised a colorable constitutional claim that the Government deprived him of his statutory right to counsel at his credible fear hearing.  However, the panel held that the Supreme Court's decision in *DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020), abrogated the "colorable constitutional claim" exception to the limits Congress placed on the court's jurisdiction to review challenges to expedited removal orders under the facts of this case.

The panel explained that in *Thuraissigiam*, the Supreme Court concluded that a noncitizen who is detained shortly after unlawful entry cannot be said to have "effected an entry" into the country and therefore has only those rights regarding admission that Congress has provided by statute. In Thuraissigiam's case, the Supreme Court explained that Congress provided the right to a determination whether he

had a significant possibility of establishing eligibility for asylum, and he was given that right. Moreover, because the Due Process Clause provides nothing more, the Supreme Court concluded that it did not require review of that determination or how it was made. Thus, the Supreme Court held that the jurisdictional provisions as applied to Thuraissigiam's case, did not violate due process under the facts of the case. Likewise, the panel concluded that *Thuraissigiam* precluded this court from recognizing a "colorable constitutional claim" exception to this case, in which Guerrier maintained that he was apprehended shortly after entering the United States.

The panel rejected Guerrier's attempt to distinguish *Thuraissigiam* on the basis that Thuraissigiam filed a habeas petition and Guerrier did not. The panel explained that the difference in the procedural posture did not alter its analysis here, because in concluding that Thuraissigiam's due process rights were not violated, the Supreme Court emphasized that the due process rights of noncitizens who have not "effected an entry" into the country are coextensive with the statutory rights Congress provides. Bound by this precedent, the panel held that *Thuraissigiam* abrogated any "colorable constitutional claims" exception to the limits 8 U.S.C. § 1252(a)(2)(A) placed on this court's jurisdiction to review Guerrier's petition.

**COUNSEL**

Rajan O. Dhungana (argued), Federal Practice Group, Las Vegas, Nevada, for Petitioner.

Neelam Ihsanullah (argued), Trial Attorney; Anthony C. Payne, Assistant Director; Brian M. Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Noor Zafar, Lee Gelernt, and Anand Balakrishnan, American Civil Liberties Union Foundation, Immigrants' Rights Project, New York, New York; Cody Wofsy, American Civil Liberties Union Foundation, Immigrants' Rights Project, San Francisco, California; for Amicus Curiae American Civil Liberties Union.

Brian C. Baran, Reichman Jorgensen Lehman & Feldberg LLP, Washington, D.C.; Kate Falkenstien, Reichman Jorgensen Lehman & Feldberg LLP, Redwood Shores, California; for Amicus Curiae Hever Alberto Mendoza Linares.

**ORDER**

The opinion filed August 16, 2021 (Docket Entry No. 45), and reported at 8 F.4th 1066, is amended by the Amended Opinion filed in its place concurrently with this order.

With these amendments, the full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it. Fed. R. App. P. 35. The

panel unanimously votes to deny the petition for panel rehearing. Judge M. Smith and Judge Owens vote to deny the petition for rehearing en banc, and Judge Robreno so recommends.

Accordingly, the petition for panel rehearing and the petition for rehearing en banc are **DENIED**. No further petitions for rehearing will be accepted.

## OPINION

ROBRENO, District Judge:

Petitioner Anthony Guerrier seeks review of an immigration judge's negative credible fear determination, which resulted in an order for his expedited removal. He acknowledges that we typically lack jurisdiction to review direct challenges to expedited removal orders but argues we have jurisdiction to review his petition because he raises a colorable constitutional claim.

Although our prior opinions have suggested that such claims may form a basis for our jurisdiction, the Supreme Court's decision in *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020), abrogated the "colorable constitutional claim" exception to the limits Congress placed on our jurisdiction to review challenges to expedited removal orders under the facts of this case. Accordingly, we dismiss the petition for review for lack of jurisdiction.

# I.

## A.

Under the applicable statutory provisions, noncitizens who lack valid entry documents at the time of their arrival to the United States are deemed "removable." *See DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020) (quoting 8 U.S.C. §§ 1182, 1229a(e)(2)(A)). The standard removal process involves three levels of review: an evidentiary hearing before an immigration judge, an appeal to the Board of Immigration Appeals, and review in a federal court of appeals. *Id.* (citing §§ 1229a(c)(5), 1252(a)).

However, Congress has provided *expedited* removal procedures for certain noncitizens, including those who (1) are "inadmissible because [they] lack[] a valid entry document," (2) have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," and (3) are "among those whom the Secretary of Homeland Security has designated for expedited removal." *Id.* at 1964–65 (quoting § 1225(b)(1)(A)(i), (iii)(I)–(II)). "Once 'an immigration officer determines' that a designated applicant 'is inadmissible,' 'the officer [must] order the alien removed from the United States without further hearing or review.'" *Id.* at 1965 (alteration in original) (quoting § 1225(b)(1)(A)(i)).

"Applicants can avoid expedited removal by claiming asylum. If an applicant 'indicates either an intention to apply for asylum' or 'a fear of persecution,' the immigration officer 'shall refer the alien for an interview by an asylum officer.'" *Id.* (quoting § 1225(b)(1)(A)(i)–(ii)). If the asylum officer finds that the applicant has a credible fear of

persecution, "the applicant will receive 'full consideration' of his asylum claim in a standard removal hearing." *Id.* (quoting 8 C.F.R. § 208.30(f)) (citing 8 U.S.C. § 1225(b)(1)(B)(ii)).

If the officer instead determines that the applicant lacks a credible fear, a supervisor reviews the determination. *Id.* (citing 8 C.F.R. § 208.30(e)(8)). If the supervisor agrees with the officer, "the applicant may appeal to an immigration judge, who can take further evidence and 'shall make a de novo determination.'" *Id.* (quoting 8 C.F.R. § 1003.42(c), (d)(1)) (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(III)).

If the immigration judge agrees with the asylum officer that the noncitizen does not have a credible fear of persecution or torture, "the case shall be returned to DHS for removal of the alien. The immigration judge's decision is final and may not be appealed." 8 C.F.R. § 1208.30(g)(2)(iv)(A) (2021); *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(I) ("Subject to [review by an immigration judge upon request], if the officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review."). However, "the Executive always has discretion not to remove." *Thuraissigiam*, 140 S. Ct. at 1983 n.28 (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483–84 (1999)); *see also* 8 C.F.R. § 208.30(g)(2)(i) (2021) (providing that "DHS . . . may reconsider a negative credible fear finding that has been concurred upon by an immigration judge").

In sum, a noncitizen subject to expedited removal "has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the

applicant has not asserted a credible fear." *Thuraissigiam*, 140 S. Ct. at 1965–66.

## B.

Guerrier is a citizen of Haiti. His primary language is Creole, and he does not speak English. Guerrier entered the United States unlawfully in November 2019 and was apprehended by immigration authorities.[1] He was issued an expedited removal order. He expressed fear that he would be persecuted if he were to return to Haiti and was consequently referred to an asylum officer for a credible fear interview.

During his credible fear interview, the asylum officer asked Guerrier whether he had an attorney or consultant. The following exchange occurred:

> GUERRIER: For now, I do not have a lawyer, but I would like to have a lawyer help me.
>
> OFFICER: An attorney is not required for this interview. Do you feel comfortable proceeding today without an attorney?
>
> GUERRIER: If it's questions about my life, I can answer; but if it's complicated questions, then I don't know.
>
> OFFICER: This interview is about your fear returning to Haiti. So I will be asking you

---

[1] Petitioner did not set forth when he was specifically apprehended, but maintains that he was apprehended "shortly thereafter" entering the United States. The Government does not contest this.

several questions about why you are afraid to return to Haiti. It is up to you if you would like to proceed w[ith] an attorney.

GUERRIER: I don't have a problem.

OFFICER: So you wish to proceed today w[ithout] an attorney?

GUERRIER: Yes, if you want to give me an attorney.

OFFICER: No sir, I do not have the authority to give you an attorney. This interview is about your fear returning to Haiti. So I will be asking you several questions about why you are afraid to return to Haiti. It is up to you if you would like to proceed w[ith] an attorney.

GUERRIER: Ok, I will answer your questions.

Guerrier proceeded without counsel. At the end of the interview, he asked for a list of lawyers. The asylum officer found that Guerrier failed to establish a credible fear of persecution.

Guerrier requested review by an immigration judge. Guerrier appeared at the credible fear review hearing without counsel. At the beginning of the hearing, the immigration judge asked Guerrier if he had any questions. Guerrier stated that he had been told he was going to be given a list of lawyers but had not received such a list. The immigration judge informed Guerrier that he was not entitled to

representation and that he had already received the promised list of attorneys as an attachment to the paperwork for the credible fear review. Guerrier responded, "Maybe I did not see it. I don't know if it's the fact that I don't speak English that I don't understand it." The immigration judge stated, "Well, sir, according to the [c]ourt's records, the list was provided to you, and that was several days ago. Now, as I said, you have no right to be represented in credible fear review proceedings. There's no right to a lawyer." Guerrier stated, "Well, maybe it's the fact that I don't speak English, I don't understand what's going on, and that's the reason why I did not start looking for a lawyer for my case." The immigration judge responded, "Well, sir, that's not something that I can control." The immigration judge proceeded with the hearing, ultimately agreeing with the asylum officer's negative credible fear decision.

The instant petition for review followed. The Government filed a motion to dismiss the action for lack of subject matter jurisdiction, and Guerrier filed a motion for a stay of removal. We denied the motion to dismiss without prejudice to renewing the arguments and granted the stay of removal.

## II.

"We determine our own jurisdiction *de novo*." *Pena v. Lynch*, 815 F.3d 452, 455 (9th Cir. 2016) (citing *Bolanos v. Holder*, 734 F.3d 875, 876 (9th Cir. 2013)). "We also review constitutional claims *de novo*." *Id.* (citing *Coronado v. Holder*, 759 F.3d 977, 982 (9th Cir. 2014)).

**III.**

A.

Generally, we have jurisdiction to review final orders of removal. *See* 8 U.S.C. § 1252. However, through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress strictly cabined judicial review of *expedited* removal orders. The statute "provides that 'no court shall have jurisdiction to review' an expedited removal order except as provided in subsection (e)" of section 1252. *Alvarado-Herrera v. Garland*, 993 F.3d 1187, 1192 (9th Cir. 2021) (quoting § 1252(a)(2)(A)).

In turn, subsection (e) limits judicial review to three issues: "'whether the petitioner is an alien'; 'whether the petitioner was ordered removed' under an expedited removal order; and whether the petitioner can prove that he or she has lawful status in the United States as an asylee, refugee, or permanent resident." *Id.* (quoting 8 U.S.C. § 1252(e)(2)) (citing *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1963–64 (2020)). These issues "must be raised in habeas corpus proceedings." *Id.*

We have recognized that although another provision of the IIRIRA—section 1252(a)(2)(D)—"re-vests courts with jurisdiction to review constitutional claims and questions of law otherwise barred" by the statute, the re-vesting provision "does *not* apply to the jurisdictional limitations codified elsewhere" in the section, including the aforementioned limitation in subparagraph (A) circumscribing judicial review of expedited removal orders. *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1138 (9th Cir. 2008).

Applying these statutory provisions, we held in *Pena v. Lynch*, 815 F.3d 452, 457 (9th Cir. 2016), that this court

lacks jurisdiction to review a direct challenge to an expedited removal order absent a statutory exception. More recently, this court invoked this jurisdictional bar in *Alvarado-Herrera*, which involved a petitioner who entered the United States unlawfully in 2013 and was removed pursuant to an expedited removal order. 993 F.3d at 1190. He re-entered the United States unlawfully in 2017. *Id.* Rather than issue a new expedited removal order, DHS reinstated the 2013 order. *Id.*; *see also* 8 U.S.C. § 1231(a)(5) (authorizing reinstatement of prior removal orders upon illegal re-entry).

Before this court, the petitioner in *Alvarado-Herrera* argued DHS could not reinstate the prior order because the order failed to comply with two requirements imposed by the regulation governing expedited removal. 993 F.3d at 1191 (citing 8 C.F.R. § 235.3). Specifically, he contended the order was not "reviewed and approved by the appropriate supervisor" and that it was not clear whether the petitioner "sign[ed] the reverse of [Form I-860] acknowledging receipt." *Id.* at 1191–92 (first quoting § 235.3(b)(7); and then quoting § 235.3(b)(2)(i)).

The court concluded that it lacked jurisdiction to entertain these arguments. *Id.* It acknowledged that it does have jurisdiction to entertain collateral attacks on the validity of a removal order being reinstated where "the petitioner can show that a 'gross miscarriage of justice' occurred during the earlier removal proceedings." *Id.* (quoting *Garcia de Rincon*, 539 F.3d at 1137–38). But it noted that "even that narrow sliver of jurisdiction is foreclosed when the underlying order is . . . an expedited removal order." *Id.* (citing *Garcia de Rincon*, 539 F.3d at 1138–39). The court reached this conclusion by noting the aforementioned limits 8 U.S.C. § 1252(e)(2) places on judicial review of expedited removal orders and concluding that the petitioner's challenges "d[id]

not fall within any of the categories of reviewable issues, and this is not a habeas corpus proceeding in any event." *Id.* Accordingly, the court dismissed that portion of the petition for lack of jurisdiction. *Id.* (citing *Pena*, 815 F.3d at 455–56).

Turning to the instant petition, *Pena*'s holding that the court lacks jurisdiction to review a direct challenge to an expedited removal order would seem to foreclose Guerrier's request for review of an immigration judge's negative credible fear determination. *See* 815 F.3d at 455. However, Guerrier argues that because he raises a "colorable constitutional claim," he qualifies for an exception to the general rule that we lack jurisdiction to review challenges to expedited removal orders. We turn next to this issue.

## B.

The issue of a possible "colorable constitutional claim" exception stems from our opinion in *Pena v. Lynch*, 815 F.3d 452, 456 (9th Cir. 2016), which involved a procedural due process challenge to the petitioner's expedited removal proceeding. After the asylum officer concluded that the petitioner had not shown a credible fear of persecution, the petitioner requested review of the officer's decision by an immigration judge. *Id.* at 454. In response, the petitioner received a form titled "Notice of Referral to Immigration Judge," which provided, in part: "You may be represented in this proceeding, at no expense to the government, by an attorney or other individual authorized and qualified to represent persons before an Immigration Court. If you wish to be so represented, your attorney or representative should appear with you at this hearing. . . ." *Id.*

The petitioner appeared before the immigration judge without an attorney. *Id.* The immigration judge asked the

petitioner at the beginning of the hearing whether he intended to have an attorney or anyone else be present to represent or assist him. *Id.* The petitioner responded, "No, no, that's fine." *Id.* At the conclusion of the hearing, the immigration judge affirmed the asylum officer's determination and informed the petitioner that the decision was final and could not be appealed. *Id.* Notwithstanding this instruction, the petitioner appealed to the Board of Immigration Appeals, which dismissed the appeal for lack of jurisdiction. *Id.* at 454–55 (first citing 8 U.S.C. § 1225(b)(1)(C); and then citing 8 C.F.R. § 1208.30(g)(2)(iv)(A)). The petitioner then filed a petition for review with this court, arguing that the IJ's "failure to elicit a knowing and voluntary waiver of Pena's right to counsel violated his due process rights." *Id.* at 455.

We dismissed the petition, concluding that "because no claim listed in the statutory exceptions was raised," we "lack[ed] jurisdiction to review any constitutional or statutory claims related to the underlying removal order." *Id.* at 456 (quoting *Garcia de Rincon*, 539 F.3d at 1139). We noted, however, that "[b]oth the Supreme Court and this Circuit have suggested that a litigant may be unconstitutionally denied a forum when there is absolutely *no* avenue for judicial review of a colorable claim of constitutional deprivation." *Id.* (first citing *Webster v. Doe*, 486 U.S. 592, 603 (1988); and then citing *Flores-Miramontes v. INS*, 212 F.3d 1133, 1136 (9th Cir. 2000)). But we concluded that the petitioner in *Pena* "d[id] not raise a colorable constitutional claim, since the Immigration Judge elicited a voluntary waiver of counsel," and that "the jurisdiction-stripping provisions of the statute retain some

avenues of judicial review, limited though they may be." *Id.* at 456–57 (citing *Flores-Miramontes*, 212 F.3d at 1136).**[2]**

C.

Guerrier argues that unlike in *Pena*, where the immigration judge elicited a voluntary waiver of counsel during the petitioner's credible fear interview, Guerrier "continually expressed a desire for counsel during his credible fear interview, and the Government failed to provide vital information in [his] native language." He argues this failure violated his right to due process, qualifying him for the "colorable constitutional claim" exception to the general rule that we lack jurisdiction to hear challenges to expedited orders of removal.

Although Guerrier argues the Government deprived him of a constitutional right to counsel, in the expedited removal context, a petitioner's due process rights are coextensive with the statutory rights Congress provides. *See Thuraissigiam*, 140 S. Ct. at 1982. With respect to representation, the expedited removal statute provides that a noncitizen who is eligible for an asylum interview "may consult with a person or persons of [his or her] choosing prior to the interview or any review thereof, according to

---

**[2]** Subsequent non-precedential opinions from this court involving review of expedited removal orders noted this "colorable constitutional claim" exception. *See, e.g.*, *Cervantes v. Barr*, 769 F. App'x 456, 456 (9th Cir. 2019) (dismissing petition for lack of jurisdiction and noting that the court "do[es] have jurisdiction to review 'a colorable constitutional claim,' *see Pena*, 815 F.3d at 456, but Petitioners do not raise a colorable constitutional claim here"); *Sombir v. Barr*, No. 18-73502, 2019 U.S. App. LEXIS 16258, at *1 (9th Cir. May 30, 2019) (dismissing petition for lack of jurisdiction and noting that the petitioner "d[id] not raise a colorable constitutional claim" (citing *Pena*, 815 F.3d at 456)).

regulations prescribed by the Attorney General," so long as the consultation is "at no expense to the Government" and does not "unreasonably delay the process." 8 U.S.C. § 1225(b)(1)(B)(iv); *see also* 8 C.F.R. § 1003.42(c) (2021).

On the record before the court, Guerrier appears to raise the sort of "colorable constitutional claim" *Pena* envisions— i.e., a claim that the Government deprived him of the rights Congress afforded. *Pena*, 815 F.3d at 456. He alleges the Government deprived him of his statutory right to consult with a person of his choosing because it did not provide information about this right in his native language. Guerrier also contends the immigration judge should have postponed the credible fear review hearing after he informed the judge that he had not had the opportunity to consult with a person of his choosing. Accordingly, we conclude that Guerrier raises a colorable constitutional claim.

However, we nonetheless lack jurisdiction to review his petition because the Supreme Court's decision in *Thuraissigiam*, 140 S. Ct. at 1982–83, abrogated the "colorable constitutional claim" exception to the statutory limits on our jurisdiction under the facts of this case.

### D.

*Thuraissigiam* involved a habeas petition filed by Vijayakumar Thuraissigiam, a Sri Lankan national who crossed the southern border to the United States and was detained for expedited removal within 25 yards of the border. 140 S. Ct. at 1967. He sought asylum, claiming he feared returning to Sri Lanka "because a group of men had once abducted and severely beaten him," although "he did not know who the men were, why they had assaulted him, or whether Sri Lankan authorities would protect him in the future." *Id.* The asylum officer determined Thuraissigiam

lacked credible fear of persecution, the supervising officer agreed, and an immigration judge affirmed. *Id.* at 1968.

Thuraissigiam then filed a federal habeas petition. *Id.* He argued "the immigration officials deprived him of 'a meaningful opportunity to establish his claims' and violated credible-fear procedures by failing to probe past his denial of the facts necessary for asylum." *Id.* He also alleged the officials "failed to apply the 'correct standard' to his claims—the 'significant possibility' standard—despite its repeated appearance in the records of their decisions." *Id.*

The district court dismissed Thuraissigiam's petition, "holding that §§ 1252(a)(2) and (e)(2) and clear Ninth Circuit case law foreclosed review of the negative credible-fear determination that resulted in [his] expedited removal order." *Id.* (citing *Thuraissigiam v. DHS*, 287 F. Supp. 3d 1077, 1081 (S.D. Cal. 2018), *rev'd*, 917 F.3d 1097, 1119 (9th Cir. 2019), *rev'd*, 140 S. Ct. at 1983). The district court also rejected Thuraissigiam's argument that the jurisdictional limitations of section 1252(e) violate the Suspension Clause. *Id.*

We reversed, holding that section 1252(e) violates the Suspension Clause. 917 F.3d at 1100 ("Although § 1252(e)(2) does not authorize jurisdiction over the claims in Thuraissigiam's petition, the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, requires that Thuraissigiam have a 'meaningful opportunity to demonstrate that he is being held pursuant to "the erroneous application or interpretation" of relevant law.'" (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))). In a footnote, we also explained that we "disagree[d] with the government's contention . . . that a person like Thuraissigiam lacks all procedural due process rights." *Id.* at 1111 n.15. We further noted as follows: "[W]e have held that a noncitizen situated almost exactly like

Thuraissigiam had a constitutional right 'to expedited removal proceedings that conformed to the dictates of due process.'" *Id.* (quoting *United States v. Raya-Vaca*, 771 F.3d 1195, 1203 (9th Cir. 2014)).

The Supreme Court reversed. Noting that Thuraissigiam's requested relief "f[ell] outside the scope of the writ as it was understood when the Constitution was adopted," the Court held that section 1252(e) does not violate the Suspension Clause. 140 S. Ct. at 1971 (citing *Castro v. DHS*, 835 F.3d 422, 450–51 (3d Cir. 2016) (Hardiman, J., concurring dubitante)).

The Court then rejected Thuraissigiam's argument that the IIRIRA "violates his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Id.* at 1981. It described this court's analysis of Thuraissigiam's due process argument as "contrary to more than a century" of Supreme Court precedent recognizing that "as to 'foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Id.* at 1982 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)).

Thuraissigiam argued this rule did not apply to him "because he was not taken into custody the instant he attempted to enter the country (as would have been the case had he arrived at a lawful port of entry)" but rather "succeeded in making it 25 yards" into the United States. *Id.* The Supreme Court disagreed, concluding that this argument "disregards the reason for our century-old rule regarding the due process rights of an alien seeking initial entry," which rests on the following propositions:

> "[T]he power to admit or exclude aliens is a sovereign prerogative"; the Constitution gives "the political department of the government" plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted.

*Id.* (alteration in original) (citations omitted).

The Court concluded that a noncitizen who, like Thuraissigiam, "is detained shortly after unlawful entry cannot be said to have 'effected an entry'" into the country and therefore "has only those rights regarding admission that Congress has provided by statute." *Id.* at 1982–83 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). In Thuraissigiam's case, "Congress provided the right to a 'determin[ation]' whether he had 'a significant possibility' of 'establish[ing] eligibility for asylum,' and he was given that right." *Id.* at 1983 (alterations in original) (quoting 8 U.S.C. § 1225(b)(1)(B)(ii), (v)). Because "the Due Process Clause provides nothing more, it does not require review of that determination or how it was made." *Id.* Accordingly, the Court concluded that section 1252(e)(2) did not violate due process under the facts of the case. *Id.*

Here, *Thuraissigiam*'s conclusion that the Due Process Clause does not require review of how the agency determines whether a noncitizen subject to expedited removal is eligible for asylum precludes this court from reviewing Guerrier's petition, despite his raising a colorable constitutional claim. *See id.* at 1983. With respect to a noncitizen's right to review of an expedited removal order, Congress has provided for a credible fear interview with an

asylum officer, review of the asylum officer's determination by a supervisor, and final review by an immigration judge. Congress chose to strictly cabin this court's jurisdiction to review expedited removal orders. It provided exceptions to that limitation under specific circumstances that do not apply here. *Thuraissigiam* precludes this court from recognizing a "colorable constitutional claim" exception to this case.

Guerrier's attempts to distinguish *Thuraissigiam* from the instant action are unavailing. His principal argument is that the Supreme Court's opinion does not bind this court because Thuraissigiam filed a habeas petition and Guerrier did not. It is true that Guerrier appealed directly to this court from the expedited removal order rather than filing a habeas petition in the district court. But this difference in the procedural posture does not alter our analysis here. In concluding that Thuraissigiam's due process rights were not violated, the Supreme Court emphasized that the due process rights of noncitizens who have not "effected an entry" into the country are coextensive with the statutory rights Congress provides. *Id.* at 1982–83 (quoting *Zadvydas*, 533 U.S. at 693). Bound by this precedent, we hold that *Thuraissigiam* abrogated any "colorable constitutional claims" exception to the limits 8 U.S.C. § 1252(a)(2)(A) places on this court's jurisdiction to review Guerrier's petition.

We have considered Guerrier's remaining arguments and find them to be without merit. Because no basis exists for this court's jurisdiction, we must dismiss the petition for review.

## IV.

We lack jurisdiction to review Guerrier's challenge to his expedited removal proceedings. Accordingly, we dismiss the petition for review.

**PETITION FOR REVIEW DISMISSED.**